### KELLEY & GRADY v. DAVIS.

(Court of Civil Appeals of Texas. Dallas. June 10, 1911. Rehearing Denied June 30, 1911.)

1. BROKERS (§ 8*)—ACTION FOR COMMISSIONS —EVIDENCE.

On the issue whether a broker was employed to procure a purchaser of real estate on specified terms, the testimony of a third person that he had, at about the time of the making of the alleged contract, offered to purchase the property from the owner on better terms than those stipulated for in the contract, and that the owner had refused to sell, was irrelevant.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. § 8.*]

2. BROKERS (§ 8*)—EMPLOYMENT—EVIDENCE —ADMISSIBILITY.

Where, in an action by a broker for commissions, the owner of the land denied making any contract with the broker, the testimony of a third person that he had offered, at about the time of the making of the alleged contract with the broker, to purchase from the owner on more favorable terms, was incompetent, in the absence of an attack on the credibility of the owner.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. § 8.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by Kelley & Grady against John M. Davis. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Wolfe, Hare & Maxey, for appellants. Cecil H. Smith and G. P. Webb, for appellee.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

BOOKHOUT, J. Appellants brought this suit against appellee alleging that they, as partners, were engaged in the real estate business, and that appellee contracted with them to sell for him 180 acres of land at the price of $100 per acre, and that he agreed to pay them 5 per cent. commission on the price obtained, or that if he did not expressly agree to pay such five per cent. commission, then that he did agree to pay the usual and customary commission, which was five per cent. They further allege that they did find a purchaser, to wit, J. D. Stark, who agreed to take said land at the price agreed upon, and that appellee refused to make the deed, as he had agreed to do, to said purchaser. They claim 5 per cent. commissions, or $900, for which they asked judgment. Defendant answered by general demurrer, special exceptions, general denial, and special answers, wherein he alleges that if any conversation he ever had with appellants could be construed as a contract authorizing them to sell his land, that thereafter and before any sale had been made, he had revoked the same. The case was tried on May 7, 1910, and resulted in a judgment for appellee, that plaintiffs take nothing by their suit, and that they pay all costs incurred in the case, for which execution should issue. Plaintiffs' motion for new trial having been overruled, they perfected an appeal.

It is assigned that the court erred in permitting the witness, W. A. Jenkins, to testify that in September or October, 1904, he had offered defendant, John M. Davis, $100 per acre for his land near Howe, and told him that he would pay $5,000 cash on the purchase price, and that Davis had told him that he did not know whether he wanted to sell, but that, if he decided to do so, he would let him know; and that he heard a man tell Davis one day, as he and Davis were going out of town, that he (Davis) had one of the best farms in Grayson county, and that he had on several occasions spoken to Davis about buying this farm, and on one occasion while in the city of Sherman.

The deposition of W. A. Jenkins was taken in the case. The defendant Davis offered to read to the jury the answer of said witness to the fourth direct interrogatory, as follows: "I was acquainted with the 180 acres of land owned by John M. Davis of near Howe in the fall of 1904. I do not know any certain time, but I spoke to Mr. Davis about buying this land in September and October, 1904; at several different times I spoke to him about it—at one time in Sherman. I saw him frequently every week, and spoke about buying the land in September and October. I told Mr. Davis that I would give him $100 an acre for the place, provided the payments I would make would be satisfactory. He stated that he did not know whether he wanted to sell it or not, but told me that if he desired to sell he would let me know. I offered Mr. Davis $100 an acre for his place, and told him that I would pay him $5,000 cash down on the purchase price."

[1] Plaintiffs objected to the same because irrelevant, immaterial, hearsay, self-serving, and because in no manner connected with or growing out of the transaction out of which this suit arose; and because the same was a conversation and transaction between other parties. These objections were overruled, and the evidence admitted. The court erred in overruling these exceptions and in admitting the testimony. Ross v. Moskowitz, 95 S. W. 90; Ross v. Moskowitz, 100 Tex. 434, 100 S. W. 768; Smye v. Groesbeck, 73 S. W. 972; Lloyd v. Kerley, 106 S. W. 696; Stockton v. Brown, 106 S. W. 423; Stuert v. Kohlberg, 53 S. W. 596; Yarborough v. Creager, 77 S. W. 645. The evidence between Kelley & Grady on the one hand and Davis on the other as to whether Davis placed his farm in the hands of Kelley & Grady for sale and whether, if so, they produced a purchaser ready and willing to buy the property on the terms offered by them, was sharply in conflict. Appellant Kelley testified: That he had a contract with Davis for the sale of his property. That having received a letter from a Kansas man wanting an alfalfa farm, he spoke to Mr. Davis, who told him that he could sell his farm for $100 an acre. That he wrote the description down in his book at the time in Mr. Davis' presence, as follows: "J. M. Davis, 180 acres, one and one-half miles east of Howe, $5,000 house, other improvements, fine black land, price one hundred dollars per acre." That he sold the property to Mr. John Stark. That there was nothing said about commissions, but that 5 per cent. was the usual and customary commission at the time for the sale of real estate. That this charge is made by all real estate men in the county, as far as he knew. Pending the negotiations with Mr. Stark, he wrote the following letter to appellee: "Sherman, Texas, Sept. 19th, 1904. Mr. John M. Davis, Howe, Texas. Dear Sir: We think we have a man that will take your place provided he can arrange the payments. What amount would you want down and what is the lowest interest on the balance? We think that you could afford to give low interest as your price is pretty well up. Let us hear from you at once. Respectfully, Kelley & Grady, Room 9, Moore Block, Sherman, Texas." That he had no answer from the letter, but Davis afterwards told him that he had received it. That Davis apologized for not having answered the letter and said he was aiming to come up every day with a reason why he had not answered. Davis said that he wouldn't have thought that a man would have given that price. "I asked him in regard to the terms, and he told me two or three thousand dollars down he thought would make it all right," and they talked a little longer and Davis finally said he would take two thousand dollars and make the notes at seven per cent. He afterwards saw

Stark, who agreed to take the property on the terms mentioned. Davis in his testimony, in effect, denied making the contract with Kelley & Grady. The evidence of the witness Jenkins bore upon a closely contested issue in the case. The jury may have concluded from this testimony that Jenkins offered Davis $100 per acre for his farm and to pay $5,000 cash on the purchase and the balance in notes, and argued, why, then, should he take $100 per acre and $2,000 cash and notes for the balance at 7 per cent. interest? Why pay Kelley & Grady $900 to sell his farm at $100 per acre with $2,000 cash, when there was a man ready and anxious to take it at the same price, pay $5,000 cash and no commission to be paid?

Appellee contends that the fact that witness Jenkins had offered to buy appellee's land at $100 per acre and pay $5,000 cash was evidence that appellee was telling the truth when he stated he did not agree to sell his land to J. D. Stark for the same price with only $2,000 down, out of which $2,000 $900 was to go to appellants as commission. There had been no attack made on the testimony of Davis.

[2] The testimony of Jenkins was irrelevant and immaterial to any issue in the case; and in the absence of an attack upon the credibility of Davis it was not competent to admit evidence for the purpose of showing that his testimony in the case was truthful.

For the error in admitting the testimony of Jenkins, the judgment is reversed and the cause remanded.